**I. H. BASS, Mary Jo Bass High, F. V. High and Ray Bass, Plaintiffs,**

v.

**GULF OIL CORPORATION and Gulf Refining Company, Defendants.**

Civ. A. No. 2142.

United States District Court
S. D. Mississippi,
Hattiesburg Division.

Oct. 13, 1969.

Michael R. Eubanks, Lumberton, Miss., William A. McKenzie, McKenzie & Baer, Dallas, Tex., for plaintiffs.

James A. Boone, Charles C. Hairston, Earl T. Thomas, Charles R. Davis, Jackson, Miss., for defendants.

## MEMORANDUM OPINION ON MOTIONS TO COMPEL OPPONENT TO ANSWER QUESTIONS AND FOR PRODUCTION, INSPECTION AND COPYING OF DOCUMENTS

NIXON, District Judge.

In their Complaint filed on November 30, 1966 against defendants, plaintiffs, the principal royalty owners of the defendant Gulf Oil Corporation's I. H. Bass, et al lease located in the Baxterville Field in Lamar County, Mississippi, charged that the defendants have combined and have conspired in controlling and monopolizing crude oil prices in the field in violation of the Anti Trust Laws of the United States and more particularly sections 1 and 2 of the Sherman Act (15 U.S.C. secs. 1 and 2), sec. 2(a), (f) of the Clayton Act as amended (15 U.S.C. sec. 13(a), (f)) and sec. 7 of the Clayton Act (15 U.S.C. sec. 18). More particularly, plaintiffs allege that the defendant Gulf Oil Corporation has, since at least June 1, 1963, fixed and maintained an arbitrary posted price of $2.00 per barrel for oil produced by it under the Bass Lease through an illegal and discriminatory agreement with its subsidiary, the defendant Gulf Refining Company and that this $2.00 per barrel price is at least $.25 cents per barrel less than the market value of the oil produced from June 1, 1963 to the date of this suit.

Plaintiffs have filed two motions, namely, a Motion to Compel J. G. Coates, an agent and employee of the defendant Gulf Oil Corporation to answer questions propounded to him on the taking of his oral deposition on August 14, 1969, which he refused to answer pursuant to the advice of counsel who objected thereto; and a Motion for Production, Inspection and Copying of the following documents, filed pursuant to Rule 34: (1) Lease operating statements for the Bass Lease for the years 1967, 1968 and 1969; (2) Domestic control reports for the Baxterville Field from 1960 to June 1969; and (3) data concerning allowables, well production history, up or down structure location, and any other financial data regarding the costs of drilling, maintaining and operating Bass Wells Nos. 3, 4 and 5, all of which the defendants refused to produce.

The motion filed by plaintiffs to compel the witness Coates to answer questions propounded to him upon the taking of his oral deposition on August 14, 1969 for the purpose of inquiring about the basis for, and manner of, setting the price payed for crude oil in the Baxterville Field was filed after the defendants objected to certain questions asked the witness with reference to a period of time subsequent to the filing of the complaint herein on the ground of irrelevancy and thus instructing the witness not to answer.

The motion for production pursuant to Rule 34 of the Federal Rules of Civil Procedure was filed herein by plaintiffs following objections by the defendants to the production of the foregoing documents requested by plaintiffs during the

taking of the oral deposition of J. L. Coulson, an employee of the defendant, Gulf Oil Corporation. Defendants objected to the production on two grounds: (a) that they relate to a period of time subsequent to November 30, 1966, the date plaintiffs' complaint was filed, and thus are irrelevant to this suit; and (b) cost data for the Baxterville Field is likewise irrelevant to plaintiffs' cause of action. Furthermore, defendants also contend that plaintiffs have not affirmatively established the "good cause" required by Rule 34 as a prerequisite to the production of these documents.

The defendants objected to the questions asked during the taking of the deposition of J. G. Coates and to the production of the documents requested during the taking of the deposition of J. L. Coulson on the ground of irrelevancy for the reason that the information requested covered a period of time subsequent to the date of the filing of the complaint herein. This is the sole basis for the "Rule 26 objection" and one of the bases of the "Rule 34 objection."

Rules 26 and 34 of the Federal Rules of Civil Procedure, pursuant to which the foregoing Motions were filed, require, respectively, that answers be given and documents furnished, provided they are not privileged and are relevant to the subject matter involved in the pending action. Rule 26 specifically states that it is not ground for objection that the testimony will be inadmissible at the trial if the testimony reasonably appears calculated to lead to the discovery of admissible evidence, and Rule 34 by reference embodies the same principle. Since there is no claim of privilege, the only question before the Court in connection with the motion filed pursuant to Rule 26, and one of the questions presented by the motion filed pursuant to Rule 34 is whether the information desired through the requested answers and production is relevant to the subject matter involved in the pending action, regardless of its admissibility at the trial, provided it appears reasonably calculated to lead to the discovery of admissible evidence. Specifically, the question presented is whether in this particular case information concerning changes in the price paid by Gulf for crude oil obtained by the defendants from the Baxterville Field subsequent to the date of the filing of the complaint herein, and more specifically for the years 1967, 1968 and 1969, is relevant to the subject matter involved in the pending action and reasonably appears calculated to lead to the discovery of admissible evidence, regardless of its admissibility at the trial of this case in its present posture.

Initially, the Court notes that plaintiffs allege that the defendants have heretofore fixed the price of Baxterville crude and continued to control approximately 90% of the crude produced and sold in the Field, including its transportation. Furthermore, it is alleged that Gulf Oil continues to control plaintiffs' Baxterville royalty crude to the extent that Gulf fixes the price thereon now as it has heretofore done since prior to the construction of Gulf's Black Creek Refinery which was built for the purpose of processing Baxterville crude. Plaintiffs, through affidavits attached to their motions, seek an explanation for developments occurring after the date of the original complaint and contend that the price paid for Baxterville crude by defendant Gulf Oil Corporation is not determined by competitive forces of the market place but solely within the discretion and at the whim of Gulf. Plaintiffs base their foregoing contentions on the following: the price posted for Baxterville crude by defendant Gulf Oil continued unchanged for approximately ten years, that is, from January 30, 1957 to December 1, 1966 at $2.00 per barrel; on December 1, 1966, the day following the filing of the complaint herein, the defendant Gulf Oil raised its posted price from $2.00 to $2.25 per barrel; on February 1, 1968 Gulf raised its posted price another five cents per barrel, the last announced retroactive increase having been announced on March 7, 1968, which plaintiffs contend, could not have been dictated solely by a desire to assure a steady supply of crude inasmuch as the

five cents per barrel paid on crude purchased between February 1 and March 7, 1968 could not possibly affect the amount of supply; Mr. Coates' assistant J. W. Streit, in his deposition taken on July 11, 1969 suggested or intimated that the five cent per barrel increase effective February 1, 1968 was based on or otherwise related to a decrease in the pipeline tariff charged by defendant Gulf Refining Company in the amount of five cents per barrel effective January 1, 1968; on March 1, 1969 defendant Gulf raised its posted price for Baxterville crude an additional fourteen cents per barrel, and thus, between the date that the original complaint was filed herein and the present date there has been a total increase in the price of crude of $.44, or 22% over the $2.00 per barrel maintained for approximately ten years prior thereto. Thus, plaintiffs allege that the above increases in the price paid for Baxterville crude not only provide a basis for possibly amending their original complaint, but also are probative of the existence and power of the alleged conspiracy between defendants to fix and maintain, in defendants' absolute discretion, the price of Baxterville crude without regard to market or any other competitive forces, and thus these changes are relevant to the subject matter of this suit.

■ There apparently is a split of authority as to whether events transpiring subsequent to the filing of a suit are relevant and thus the subject of inquiry under the discovery rules, particularly in the absence of an amended or supplemental pleading bringing into direct issue the period of time subsequent to the date of filing of the original suit. A number of Courts have held that inquiry may not be made regarding events occurring subsequent to the commencement of the action. Several of these cases deal with the question of relevancy as it relates to interrogatories propounded under Rule 33, Federal Rules of Civil Procedure. McInerney v. Wm. P. McDonald Construction Co., 28 F.Supp. 557 (E.D.N.Y.1939); Massachusetts Bonding and Ins. Co. v. Harrisburg Trust Co., 2 F.R.D. 197 (M.D.Pa.1941); Cinema Amusements, Inc. v. Loew's, Inc., et al., 7 F.R.D. 318 (D.Del.1947); Stanzler v. Loews Theater and Realty Corp., 19 F.R.D. 286 (D.R.I.1955); Singer Mfg. Co. v. Brother Intern. Corp., 191 F.Supp. 322 (S.D.N.Y.1960). Other Courts have sustained objections made during oral depositions to questions relating to activities subsequent to the date of the filing of the suit. McCarthy v. Benton, 13 F.R.D. 454 (D.D.C.1952); Banana Distributors v. United Fruit Co., 19 F.R.D. 244 (S.D.N.Y.1956); see also O'Brien v. Equitable Life Assurance Society of the United States, 14 F.R.D. 141 (W.D.Mo.1953). Discovery under Rule 34 has been denied because it related to a period of time prior to the period which was the subject matter forming the basis for the suit. Service Liquor Distributors v. Calvert Distillers Corp., 16 F.R.D. 507 (E.D.N.Y.1954). Several decisions have denied discovery of events occurring subsequent to the date of an alleged injury or wrong complained of. William A. Meier Co. v. Anchor Hocking Glass Corp., 11 F.R.D. 487 (W.D.Pa. 1951); Needles v. F. W. Woolworth Co., 13 F.R.D. 460 (E.D.Pa.1952); Hammill v. Hyster Co., 42 F.R.D. 173 (E.D.Wis. 1967).

On the other hand, there is considerable case law which more liberally construes the "relevancy" requirement, thus permitting discovery of acts and events subsequent to those giving rise to the cause of action where there is any possibility that the information sought may be relevant to the subject matter of the action rather than limit it to the issues involved in the particular case. Two of the foremost textwriters on Federal Practice and Procedure espouse the more liberal rule, pointing out that the "relevant" test prerequisite to allowing discovery under the Rules means relevant to *the subject matter of the action*, and not to the precise issues raised by the pleadings. See 4 Moore's Federal

Practice, Para. 26.16(1) (1960), and 2a Barron & Holtzoff, Federal Practice and Procedure, sec. 647 (1961), and the cases cited therein. According to Barron & Holtzoff, the philosophy which should underlie any judicial construction of relevancy has been described as follows:

> "Certainly the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms. Indeed, it is not too strong to say that discovery should be considered relevant where there is any possibility that the information sought may be relevant to the subject matter of the action." 2a Barron & Holtzoff, Section 647.

> Thus, "relevancy" as a result, should be read to mean "germane" instead of "material", "competent," or "admissible." *id.* Sec. 648.

In light of this broad construction of relevance under Rule 26, which also applies to Rule 34, Professor Moore states:

> " * * * questions as to acts subsequent to the events giving rise to liability are permissible as are questions regarding acts subsequent to the date of the complaint, as these acts may be covered by a supplemental pleading." 4 Moore Para. 26.16(1).

Professor Moore recognizes that although there is authority to the contrary, it has not found favor recently and is "unduly narrow." "In effect, the cart is put before the horse." 4 *id.* Para. 26.18. According to Moore, the leading case relied on by the defendants herein, Cinema Amusements, Inc. v. Loews, *supra,* is based on an erroneous interpretation of Ball v. Paramount Pictures, 4 F.R.D. 194 (W.D.Pa.1944).

There is considerable case law supporting the views of the above textwriters. In Mall Tool Co. v. Sterling Varnish Co., 11 F.R.D. 576 (W.D.Pa.1951), the Court reviewed the authorities prohibiting discovery beyond the date of the filing of the Complaint and distinguished them on the ground that time was only one factor among several considered in determining relevancy in each of these cases, and went on to state:

> "We agree that it may be considered in determining relevancy, but, certainly, as a general proposition, the scope of interrogatories should not be strictly limited to matters occurring prior to the filing of the action."

Another case supporting post-Complaint discovery is Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., 12 F.R.D. 531 (S.D.N.Y.1952) in which the Court said:

> "The objection as to inquiry into matters subsequent to the commencement of the action is frequently and effectively met by the point that the interrogating party can normally supplement its pleading so as to include that period and it is pure formalism in such case therefore to bar such an inquiry. Conmar Products Corp. v. Lamar Slide Fastener Corp., D.C., 2 F.R.D. 154 (S.D.N.Y.1941)."

In Conmar, *supra,* the Court stated the following:

> "In this type of action (allegation of continuing conspiracy), it seems to be proper under the new rules to permit examination of such acts (subsequent to the date of the complaint) for the purpose of discovery. The court subsequently can allow amendment of the pleading to cover these acts. * * *"

The United States Supreme Court has held that post-complaint evidence may, in some circumstances, be admissible at trial. In Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), the Court stated that there is "established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny." Therefore, plaintiffs argue, *a fortiori,* that post-complaint evidence should be discoverable under the broader standards of

Rules 26 and 34 in view of the fact that the information which they seek to discover does relate to the subject matter of the complaint.

■ In this Court's judgment virtually all of the authorities relied on by the defendants seemingly limit the scope of discovery to the issues raised by the pleadings rather than determine whether the information sought is relevant to the subject matter of the suit, which is the correct test, despite the admissibility of the evidence in the trial of the case. This standard is specifically set forth in the Rules, which this Court feels should be liberally construed, to accomplish their true purpose, that is, to arrive at the truth while at the same time not permitting unbridled and wholly irrelevant discovery.

The Courts have consistently held that post-complaint discovery will be permitted, provided supplemental pleadings have previously been filed covering the post-complaint matters for which discovery was sought. Singer Mfg. Co. v. Brother Intern. Corp., *supra*; Kainz v. Anheuser Busch, Inc., 15 F.R.D. 242 (N.D.Ill.1954); Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., *supra*. The better and more reasonable view in this Court's opinion is that espoused by Professor Moore in his comprehensive work on federal practice when he says:

> "There are cases holding that a plaintiff may not obtain discovery as to damages accruing since the commencement of the action without first filing a supplemental complaint. Such a rule is believed to be unduly narrow. In effect, the cart is put before the horse." 4 Moore, Federal Practice, Par. 26.18, p. 1234.

In other words, Professor Moore takes the position that discovery should precede the filing of a supplemental pleading which in many cases cannot be formulated or filed in good faith when the pleader is without sufficient facts to make a short and plain statement of the claim showing that he is entitled to relief as required by Rule 8(a) (2). It seems that most cases holding that a supplemental pleading must be filed prior to the utilization of discovery to determine whether or not there is in fact a basis for so filing would be in effect begging the question, that is, if the pleader had information sufficient to file the supplemental pleading, he need not use the discovery procedure for one of the important purposes for which it is designed.

■ Thus, it becomes necessary for the Court to determine whether, under the facts and circumstances of this particular case and within the framework of the pleadings filed herein, the discovery sought under Rules 26 and 34 is relevant to the subject matter of the pending action regardless of whether or not it is admissible in evidence in the trial of this case in its present posture. The subject matter of this suit is an alleged continuing conspiracy to fix prices and is filed under the Anti Trust and Monopoly laws. It has been held that the existence of unreasonably high or excessive profits is an indication which, taken together with other factors, may provide an inference of monopoly power and the use of that power. American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); United Banana Co. v. United Fruit Co., 245 F.Supp. 161 (D.Conn.1965), aff'd, 362 F.2d 849 (2d Cir. 1966). The defendants on page 5 of their brief filed in opposition to the motions at issue quote from 4 Moore's Federal Practice, Par. 34.10, p. 2498 which in part states the following:

> "* * * but where a continuing conspiracy, fraud, or other wrong is alleged, discovery may cover an extensive period."

The Courts have also been liberal in allowing discovery in antitrust cases because of the public importance of the decision, the need of large corporate defendants to know which of their many activities are attacked, the issue narrowing function of discovery, and the fact

that one side may have all the facts and the ability to conceal those facts from its adversary, as noted by the Court in Leonia Amusement Corp. v. Loew's, Inc., 16 F.R.D. 583 (S.D.N.Y.1954) in which the Court observed:

"I think it is generally conceded that the rule for discovery in these anti-trust cases should be liberally construed to permit a discovery.

"In such cases the facts of the conspiracy are largely in the possession and within the knowledge of the defendants. This is so because of the very nature of the claimed conspiracy.

The acts which constitute it are usually unavailable and unknown to plaintiff. Resort, therefore, must be had to the discovery procedure of the Federal Rules of Civil Procedure and the Courts have almost uniformly been most liberal in the construction and interpretation of the Federal discovery procedure."

In *Leonia*, the Court refused to restrict discovery to the narrow time period advocated by the defendant and ordered production of documents relating to or bearing on the conspiracy, with the observation that the conditions then, before and after plaintiffs ran the Leonia are relevant.

Also, in Trans-World Airlines, Inc. v. Hughes, 29 F.R.D. 523 (S.D.N.Y.1961), the District Court in granting a motion to produce stated:

"The complaint states claims of conspiracy in violation of the antitrust statutes. The scope of proof is quite broad in these cases and under the liberal federal rules wide latitude is permitted in the deposition-discovery proceedings."

In the instant case, in which an alleged continuing conspiracy is the subject matter, this Court is of the opinion that plaintiffs are entitled to inquire into the increases in the price per barrel paid for crude oil by the defendant Gulf Oil Corporation under an alleged illegal and discriminatory agreement with its subsidiary, the defendant Gulf Refining Company, which price was first increased the day after the filing of the complaint herein and has subsequently been increased on two other occasions as stated above. In order to compute the defendants' profits, it is necessary to compare revenue derived from Baxterville crude with the cost of producing such crude and this information, according to the affidavit of plaintiffs' attorney, is not otherwise available to plaintiffs, as is verified by J. G. Coates who has previously testified by deposition.

■ Therefore, this Court finds that the defendants' objection to the questions asked of the deponent, J. G. Coates, upon oral examination on the ground of irrelevancy to the present lawsuit inasmuch as he was asked about the setting of crude oil production prices at a time subsequent to the filing of this suit is without merit, and will be overruled. Thus, plaintiffs' motion to compel the deponent Coates to answer the questions objected to should be and will be granted. The determination of the admissibility of this evidence upon the trial of this case, in the absence of a supplemental or amended pleading herein, will be made if and when it is offered during the trial of this cause. The objection of the defendants during the taking of the deposition of J. L. Coulson to the production of certain documents pursuant to Rule 34 upon the above ground is overruled for the same reason; however, the grant or denial of the Motion to Produce filed herein under Rule 34 is further dependent upon this Court's determination of the other objection raised by the defendants to the production thereof, that is, that "good cause" for production of the documents which they seek has not been affirmatively shown by the Movants.

■ In the case of Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the Court noted

that among all the discovery provisions provided for in the Federal Rules only Rules 34 and 35 require that the movant affirmatively demonstrate "good cause" as a prerequisite to the discovery permitted thereby. The Court in *Schlagenhauf* stated that Rule 34's "good cause" requirement is not a mere formality but is a plainly expressed limitation on the use of that Rule, and the "good cause" requirement is not met by mere conclusory allegations of the pleading—nor by mere relevancy to the case—but requires an affirmative showing * * * that good cause exists for ordering each particular examination. The author Judge goes on to quote from the opinion of Chief Judge Sobeloff in Guilford National Bank v. Southern Ry. Co., 297 F.2d 921, 924 (C.A. 4th Cir. 1962) as follows:

"Significantly, this freedom of action, afforded a party who resorts to depositions and interrogatories, is not granted to one proceeding under Rules 34 and 35. Instead, the court must decide as an initial matter, and in every case, whether the motion requesting production of documents * * * adequately demonstrates good cause. The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words ' * * * good cause * * *' the Rules indicate that there must be a greater showing of need under Rules 34 * * * than under the other discovery rules."

Professor Moore likewise takes the position that the mere showing of relevance is not to be equated to the "good cause" requirement under Rule 34. 4 Moore's Federal Practice 2d Ed. Par. 34.08, p. 2467.

In Crowe v. Chesapeake & Ohio Ry. Co., 29 F.R.D. 148, 150–151 (D.C.Mich. 1961) the District Court stated the following in defining "good cause":

"What must be shown under the requirements of good cause and Rule 34 are such circumstances as give the court reason to expect the beneficial objectives of pre-trial discovery will be achieved. If significant countervailing considerations appear, of a sort not unlike those which justify protective orders under Rule 30(b), then indeed a balance of the competing interest must be struck and something "special" must be shown by the movant. Thus, in some instances the obligation of showing good cause may be satisfied with ease and in other instances not at all."

The Court in *Schlagenhauf* further wrote that the ability of the movant to obtain the desired information by other means is also a relevant consideration in determining whether good cause is shown for the production of documents pursuant to Rule 34.

With the above standard or affirmative requirement in mind, it is the duty of this Court to determine whether "good cause" has been sufficiently shown by the movants for the production of the following documents: (1) Lease Operating Statements for the Bass Lease for the years 1967, 1968 and 1969; (2) Domestic Control Reports for the Baxterville Field from 1960 to June 1969; and (3) Data concerning allowables, well production history, up or down structure location, and any other financial data regarding the costs of drilling, maintaining and operating Bass Wells Nos. 3, 4 and 5.

It should be initially noted that the defendants have voluntarily produced, on oral request made during the taking of the deposition of J. L. Coulson on July 31, 1969, all of the Lease Operating Statements for the years 1959 through 1966 by Plaintiffs' Exhibit 4 to said deposition and copies of which are attached as Exhibit "A" to the affidavit filed herein on September 26, 1969 by the defendants in opposition to plaintiffs' Motion For Production. Defendants refused to produce the Lease Operating Statements for the

years requested, namely 1967, 1968 and 1969 solely on the ground, as stated in their affidavit in opposition, that they are not relevant to the subject matter because they reflect events occurring after the filing of the complaint herein. This was the sole objection made during the taking of Coulson's deposition, and was specifically stated by defendants' attorney, Mr. Earl Thomas, as the only objection to the production of these Lease Operating Statements for these three years, as is evidenced by Exhibit "A" to Plaintiffs' Supplemental Memorandum Brief filed in support of their Motion For Production and by Exhibit "B" to their Motion For Production filed herein on August 19, 1969. While the Court does not agree with plaintiffs that defendants waived their "good cause" objection to production of these documents by failure to state it at the taking of Coulson's deposition, nevertheless, the Court is of the opinion that the movants have sustained their burden of showing "good cause" for the production of these particular documents inasmuch as they would constitute evidence of costs of production incurred by the defendants which in turn have a direct bearing upon the determination of the price paid for Baxterville crude oil, and is information exclusively within the possession of the defendants. These Statements could very well furnish plaintiffs information relevant to the subject matter which would warrant an amendment to plaintiffs' original complaint.

The next question presented is whether "good cause" has been shown to entitle plaintiffs to the production of Domestic Control Reports of Baxterville Field from 1960 to June 1969. It is noted that the defendants have attached as Exhibit "B" to their Affidavit in Opposition to Plaintiffs' Motion for Production, a domestic control report for the month of March, 1960, consisting of six sheets, the data thereon concerning the entire United States, including the "Jackson" District (which consists of Mississippi and many other states) with no breakdown as to the Baxterville Field. Defendants therefore contend that any information shown on these reports would be entirely useless and thus irrelevant to the subject matter of this action, whether the reports were within the period of June 1, 1963 to November 30, 1966 or thereafter. On the other hand, plaintiffs contend and allege in affidavits in support of their Motion that they would accept quarterly reports in lieu of the monthly reports for the years in question and that they would be able to ascertain through a careful examination of these reports information which would assist them in determining information relative to the fixing of the price of crude oil and the profits derived by the defendants thereby from the Baxterville Field. In view of this assurance by plaintiffs and the fact that these reports are solely within the control and custody of the defendants, "good cause" is shown for their production in quarterly form.

Turning to the motion of the plaintiffs for the production of data concerning allowables, well production history, up or down structure or location, and any other financial data regarding the costs of drilling, maintaining and operating Bass Wells Nos. 3, 4 and 5, the Court finds that the request for "other financial data regarding the costs of drilling, maintaining and operating Bass Wells Nos. 3, 4 and 5 is too general in nature and leaves to guesswork just what movants are thereby requesting. In addition, defendants contend, and the Court agrees, that this information is nonprobative to the subject matter of this action, but would furnish information relevant only to what would possibly be the subject matter of a separate suit or suits involving possible claimed violations by Gulf Oil of the implied and express covenants of the Bass lease; that such data have no bearing on whether defendants violated the antitrust laws, and that most, if not all, of this information is a matter of public record with the Mississippi Oil and Gas Board and readily available to plaintiffs.

The majority opinion in *Schlagenhauf* considered the ability of the movant to obtain the desired information by means

other than production thereof by the opposite party, as bearing on the determination as to whether or not good cause has been shown. So also, the Court in Colonial Drive-In Theatre, Inc. v. Warner Bros. Pictures, Inc., 23 FR Serv. 34.33, Case 1 (S.D.N.Y.1956) denied a motion for production of documents which were public records and readily available to plaintiffs without charge. In Colonial Airlines, Inc. v. Janas, 13 F.R.D. 199 (S.D.N.Y.1952) the Court refused to require the production of an expert's report made for the adverse party at its expense when the movant had access to the original material on which the report was based. Therefore, for the above stated reasons and in conformity with the above decisions, the Court finds that "good cause" is not affirmatively shown by plaintiffs to warrant the granting of their motion for production of these last requested documents and that most, if not all of them, are readily available to the movants as public records and plaintiffs' motion for the production thereof will be denied. cf. Vaughn v. Chrysler Corporation, 46 F.R.D. 6 (U.S.D.C. W.D. Okl.1969).

In conclusion, plaintiffs' Motion to Compel the witness, J. G. Coates, to answer the questions asked him on oral examination will be sustained and the objection to these questions will be overruled. The Motion for Production, Inspection and Copying of the Lease Operating Statements for the Bass lease for the years 1967, 1968 and 1969 and the quarterly Domestic Control Reports for the Baxterville Field from 1960 to June 1969 will be sustained; however, the Motion for the Production, Inspection and Copying of the data concerning allowables, well production history, up or down structure location "and any other financial data regarding the costs of drilling, maintaining and operating Bass Wells Nos. 3, 4 and 5" will be overruled.

Orders accordingly shall be presented to the Court within the time prescribed by the Rules thereof. The Order requiring the production of the aforesaid documents and records shall provide for the time, place and manner for making the inspection and taking the copies, and that they shall be inspected, copied and utilized solely for the purpose of establishing facts to be used as evidence in this cause and the information contained therein shall not be divulged or used for any other purpose than the orderly prosecution of this cause and the presentation of said evidence to this Court.