Richard J. GOLDINGER, Plaintiff,

v.

BORON OIL COMPANY, Defendant.

Civ. A. No. 72–765.

United States District Court,
W. D. Pennsylvania.

Nov. 19, 1973.

Paul H. Titus and John H. Leete, Pittsburgh, Pa., for plaintiff.

Michael Yukevich, Jr., Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

In his complaint filed on September 18, 1972, plaintiff, whose contract with defendant to operate a retail gasoline service station was terminated effective January 24, 1972, alleges that he was illegally forced by defendant to sell gasoline and other products at prices fixed and determined by the defendant and was forced to participate in stamp and other promotional programs in violation of the Anti-Trust Laws of the United States. The complaint further alleges the unconscionability of defendant's commission manager agreements and plaintiff's arbitrary termination as a dealer by the defendant.

Both parties have undertaken discovery, which is complete except for the matter now in dispute. Pursuant to Rule 37(a), plaintiff has filed a Motion to Compel defendant to answer the following interrogatory propounded in plaintiff's Second Interrogatories to Defendant Boron Oil Company:

"4. Has defendant entered into new agreements with present or former Pittsburgh division commission manager since February 1, 1973?

a. If the answer is affirmative, attach a copy of the form of agreements entered into with the present or former commission manager since February 1, 1973 within the Pittsburgh district division.

b. State the reasons for all the changes referred to in the response to interrogatory 4a above."

The defendant has taken the position that this information sought by the plaintiff relating to defendant's contractual relationship with other Pittsburgh area service station operators as of February 1, 1973, is irrelevant and immaterial to the subject matter of this suit since changes in defendant's form of agreements made with third parties more than a year after plaintiff was terminated cannot affect defendant's liability to plaintiff nor can defendant's reasons for changing such agreements have any effect on defendant's liability to plaintiff, if any. Further, the defendant has also objected to such interrogatory on the grounds that the reasons for any changes in agreements with present commission managers are protected from discovery by the attorney-client privilege.

Rules 26 and 33 require that answers be given provided that they are not privileged and are relevant to the subject matter involved in the pending action. Rule 26(b) specifically states that "[i]t is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

The first question presented in this case is whether the information concerning changes in the contractual relationships between defendant and its service station operators, subsequent to the date of the filing of the complaint herein, is relevant to the subject matter involved in this pending action and reasonably calculated to lead to the discovery of ad-

missible evidence, regardless of its admissibility at the trial of this case in its present posture.

■ Discovery is permitted to acts and events transpiring subsequent to those giving rise to the cause of action where there is a possibility that the information sought may be relevant to the subject matter of the pending action rather than to limit it to the issues involved in the particular case.

Professor Moore espouses the more liberal interpretation of the relevancy requirement to allow discovery under the Rules, arguing that relevances is not to be measured by the precise issues framed by the pleadings, but by the general relevance to the subject matter. See 4 Moore's Federal Practice, paragraph 26.56 [1] (2nd ed., 1972).

In Mall Tool Co. v. Sterling Varnish Co., 11 F.R.D. 576 [W.D.Pa.1951], the court distinguished those cases prohibiting discovery beyond the date of filing the complaint on the ground that time was only one factor of several considered in determining relevancy. The court went on to state:

"We agree that it may be considered in determining relevancy, but, certainly, as a general proposition, the scope of interrogatories should not be strictly limited to matters occurring prior to the filing of the action." *Id.* at 579.

In allowing discovery of events transpiring subsequent to the filing of the complaint, the court in Bass v. Gulf Oil Corp., 304 F.Supp. 1041 [D.Miss.1969] agreed with the liberal subject matter relevance test for discovery and discussed the requirement of supplemental pleading:

"It seems that most cases holding that a supplemental pleading must be filed prior to the utilization of discovery to determine whether or not there is in fact a basis for so filing would be in effect begging the question, that is, if the pleader had information sufficient to file the supplemental pleading, he need not use the discovery procedure for one of the important purposes for which it is designed." *Id.* at 1046.

Due to the public importance of the decision and the fact that one side may have all the facts and the ability to conceal those facts from its adversary, courts have proved to be liberal in allowing discovery in antitrust cases. In Leonia Amusement Corp. v. Loew's, Inc., 16 F.R.D. 583, 584 [S.D.N.Y.1954] the court observed that ". . . it is generally conceded that the rule for discovery in these antitrust cases should be liberally construed to permit discovery . . . The courts have almost uniformly been most liberal in the construction and interpretation of the Federal discovery procedures."

■ Believing then that, rather than limiting discovery to the issues raised by the pleadings, the correct test for the scope of discovery is relevancy to the subject matter of the suit, so as to accomplish the true purpose of discovery, i. e., to arrive at the truth while at the same time not permitting wholly irrelevant discovery, the requested information sought in this present case falls within the permissible scope of discovery. By and of itself, the agreement with present commission managers may not be admissible at trial, but there is a reasonable chance that by allowing the plaintiff to see such agreement admissible evidence may flow from such discovery.

■ There can be no claim of attorney-client privilege as far as the present commission manager agreement is concerned for, by its very nature, an agreement must have been read and signed by one other than the defendant or their attorneys. Once a document or communication is shown to a third party, any privilege that once might have attached is thereby waived by its disclosure to such third party. Philadelphia Elec. Co. v. Anaconda Brass Co., 275 F.Supp. 146 [E.D.Pa.1967].

■ However, turning to interrogatory 4(b), there appears to be no such communication to third persons, so with respect to the reasons for such changes in the commission manager agreements, an inquiry must be made as to whether this is protected from discovery by virtue of the attorney-client privilege.

■ Rule 26(b) recognizes that some discovery may be limited in its scope because the matter sought may be privileged. The law of evidence governing the actual trial as to privileged matters also governs discovery examinations. *Transmirra Prods. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572 [N.Y.1960].

■ The principle of privileged communications is an exception to the general liability of every person to give full disclosure upon all facts inquired of, and thus it is incumbent upon the party seeking to invoke the attorney-client privilege to show that the communication in question satisfies privileged communications. *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148 [E.D.Pa.1969]. Likewise, it has been held that the attorney-client privilege is a narrow one and should be strictly construed against those who invoke it. *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 [D.C., 1962].

■ As acknowledged by both the plaintiff and defendant in their briefs, there are four fundamental conditions recognized as necessary to the establishment of a privilege against disclosure of communications. These include confidence that the communication will not be disclosed, confidentiality of that disclosure, an existing legal relationship, and the injury that would inure to the client by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of the litigation. Wigmore, Evidence, Sec. 2285. See also *Garner v. Wolfinbarger*, 430 F. 2d 1093 [5th Cir. 1970].

Applying those standards to the facts in the instant case, it becomes apparent that the defendant has sustained the burden placed upon it to demonstrate that the information sought is protected from discovery by the attorney-client privilege.

The reasons for the changes in the agreements with present commission managers would be primarily legal in nature. The question as posed does not seek merely specific business reasons or judgments, but fully contemplates that the legal rationale for such changes be divulged. The purpose for such communication would necessarily be for seeking legal advice or assistance, and such communication is the reason for the creation of such privilege.

It seems that defendant's communications would have been and were communicated to its attorneys for the purpose of seeking legal advice, that such communications were made in confidence, and, finally, that, as both parties indicated in their briefs, in the present context of proceedings involving the Justice Department, such disclosure could result in injury to defendant. Therefore, this being the case, inquiry into the reasons for changes in the commission manager agreements is protected from discovery by the attorney-client privilege, so defendant will not be compelled to answer that part of the interrogatory.