**Myles OSTERNECK, Guy-Kenneth Osterneck, Robert Osterneck, Myles Osterneck and Guy-Kenneth Osterneck as Trustees for the Benefit of Robert Osterneck, Plaintiffs,**

v.

**E. T. BARWICK INDUSTRIES, INC., E. T. Barwick, M. E. Kellar, Kenneth L. Hewitt, B. A. Talley, Fred L. Williamson, Henry S. Woodbridge, and Ernst & Ernst, Defendants.**

Civ. A. No. C75–1728.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 23, 1979.

---

2. See note 1, *supra.*

Julian W. Friedman, Charles A. Stillman, New York City, Alford Wall, Wall & Fuller, Roswell, Ga., for plaintiffs.

Richard M. Kirby, and Hugh M. Dorsey, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Ernst & Ernst.

James E. Tolan, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for E. T. Barwick Industries, Fred Williamson, and Kenneth L. Hewitt.

Earle B. May, Jr., Jones, Byrd & Howell, Atlanta, Ga., for E. T. Barwick.

Foy R. Devine, Fierer & Devine, Atlanta, Ga., for Buford A. Talley.

Orinda D. Evans, Alston Miller & Gaines, Atlanta, Ga., for M. E. Kellar.

## ORDER

HAROLD L. MURPHY, District Judge.

This action arises from the merger of Cavalier Bag Company, Inc. into a subsidiary of The Barwick Corporation. The complaint alleges violations of the federal securities laws and the common law of Georgia. Jurisdiction is invoked pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and the principles of pendent and ancillary jurisdiction. Presently pending before the Court is plaintiff's motion for an order directing compliance with subpoenas for deposition testimony and production of documents.

In order to understand the motion now before the Court some background information is necessary. In August of 1976, the Securities and Exchange Commission (Hereinafter "SEC") commenced an action against E. T. Barwick Industries, Inc. (Hereinafter "Barwick") and certain of its officers and directors alleging that various financial statements issued by Barwick during the period from 1968 through 1976 were materially false and misleading in violation of the federal securities laws. That litigation was terminated by the execution of a Consent and Undertaking agreement between Barwick and the SEC (attached as Appendix A). The Consent and Undertaking was incorporated into and made a part of a Final Judgment of Permanent Injunction against Barwick and others, including some of the individual defendants in this action (attached as Appendix B).

In paragraph seven of the Consent and Undertaking Barwick agreed that its Board of Directors would appoint a Special Review Committee (Hereinafter "SRC"), "to investigate and report to the full Board of Directors on the matters alleged in the

[SEC's] Complaint and with respect to all other relevant matters." The report was to be turned over not only to the Board of Directors, but to the SEC and Barwick's stockholders as well.

The Consent and Undertaking also provided that the SRC would appoint an individual, subject to SEC approval, to act as Special Counsel to the SRC. In September of 1976, W. Homer Drake, Jr. of the law firm of Swift, Currie, McGhee & Hiers was nominated by the Board of Directors to serve as Special Counsel. By letter dated October 19, 1976, the SEC stated that it had no objection to the appointment. W. Homer Drake, Jr. and his law partner, J. Alexander Porter assisted in the investigation and preparation of the SRC's report from October 19, 1976 through December 31, 1977.

The SRC prepared and submitted two documents to the Board of Directors which constituted their report. The Report of the Special Review Committee, dated September 28, 1977, was joined by a supplemental report dated December 31, 1977.

On October 20, 1978, the plaintiffs caused to be issued subpoenas to W. Homer Drake, Jr., and J. Alexander Porter for deposition testimony and production of documents. In addition to commanding their appearance for deposition purposes, the subpoenas directed the Special Counsel[1] to bring with them:

All books, records and other documents, of whatever kind or description, whether in draft or final form, including, but not limited to, transcripts, memorandums, notes, summaries and other written records and recordings of any conferences, meetings, visits or telephone calls compiled or otherwise obtained by you, or anyone acting on your behalf, while you were acting as Special Counsel to the Special Review Committee of the Board of Directors of E. T. Barwick Industries, Inc. or while you were acting in any other capacity for E. T. Barwick Industries, Inc.

In response Messrs. Drake and Porter as well as former members of the SRC filed an "Objection to Inspection or Copying of Documents". The Court will presume that these objections also relate to the deposition testimony to be elicited from the Special Counsel. The parties are advised that the Court's determination on the question of document inspection and production will also apply to similar objections raised to questions propounded at the depositions. In this way delay caused by duplicative motions and objections may be avoided.

1. The primary objection to the subpoena by the parties opposing the motion is that the evidence requested is protected by the attorney-client privilege. It is their position, and the Court does not doubt it, that any privilege which originally attached to communications by Barwick's officers, directors, employees or agents was not lost through their cooperation with the SRC or with the Special Counsel. Paragraph fifteen of the Consent and Undertaking stated expressly that:

The furnishing of information, documents or materials to the Special Committee and the Special Counsel pursuant to Paragraph IX of the FINAL JUDGMENT OF PERMANENT INJUNCTION shall not be deemed to be a waiver of any privilege which may have previously attached to said information, documents or materials.

Furthermore, the Final Judgment expressly provided for the release of any privileged information and documentation to the SEC only upon a judicial determination that the SEC's access to said documents or information did not constitute a waiver of any privilege.

Both the defendant corporation and the non-party witnesses argue that the Special Counsel's role was that of rendering legal advice to the SRC and through it to Barwick's Board of Directors. Particular reliance is placed on paragraph eleven of the

1. In the context of this order, Special Counsel refers to both W. Homer Drake, Jr. and J. Alexander Porter.

Consent and Undertaking instructing the SRC to include in its recommendation, "a consideration of whether or not any former or present [Barwick] director or officer is or should be held accountable to [Barwick] for any sum of money in connection with this matter." The parties also argue that advice rendered by the Special Counsel relating to proposed accounting and auditing controls constitutes legal advice as defined in *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1977) [Hereinafter "Diversified"].

The plaintiffs argue that the present circumstances resemble those faced by the District Court for the District of Columbia in *Securities and Exchange Commission v. Canadian Javelin,* 451 F.Supp. 594 (D.D.C. 1978) [Hereinafter "Javelin"]. In that case an attorney was appointed as special counsel to a standing committee on compliance to monitor the corporate defendant's compliance with an injunction obtained against it by the SEC in a related proceeding. The district court held that no attorney-client privilege existed between Javelin and the Special Counsel because the latter was not retained to render legal advice, but rather to report to the SEC on Javelin's compliance. Thus the court held that there could be no expectation of confidentiality or privilege. In that case the special counsel was required to disclose the requested information. *Javelin* at 596.

*Diversified,* relied on by the objectors, presents a somewhat different situation. Several years before the commencement of the case cited, Diversified Industries, Inc. became engaged in litigation involving a "proxy fight". During that litigation information came to light that the corporation had maintained a "slush fund" allegedly used for illegal purposes. Although that litigation was settled amicably, the corporation's Board of Directors concluded that an investigation into the company's business practices was needed. In the spring of 1975 a law firm was retained to make that investigation and report to the board. *Diversified* concerned an attempt by an adverse party to compel the production of certain memoranda prepared in connection with the earlier investigation. The district court ordered the documents produced and a three-judge appeals court affirmed on the grounds that the attorney had not rendered legal services so as to establish the attorney-client relationship. *Diversified* 572 F.2d at 596–606. On rehearing *en banc,* the Eighth Circuit reversed the district court holding that the attorney-client privilege was applicable since the law firm had rendered essentially legal services to the corporation. *id.* at 610.

While this Court feels that the cases described above are instructive, the fact situation presented in the present action must be described as unique. The Special Counsel retained by the SRC was not employed to monitor Barwick's compliance with the Final Judgment as was the counsel in *Javelin.* However, Messrs. Drake and Porter were not hired voluntarily to advise Barwick on how to avoid future illegality as was the special counsel in *Diversified.* Messrs. Drake and Porter were hired "to act as Special Counsel" to the SRC (Paragraph seven of the Consent and Undertaking). The mandate of the SRC as provided for in paragraph seven of the Consent and Undertaking was "to investigate and report to the full Board of Directors on the matters alleged in the Commission's Complaint and with respect to all other relevant matters." Thus, the special counsel was not hired as a monitor by the SEC nor voluntarily by Barwick for legal advice.

The goal of modern pretrial procedures is the disclosure of facts "to the fullest practicable extent". *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). As explained by the leading commentators, discovery procedures under the Federal Rules of Civil Procedure constitute "a liberal and integrated scheme for the full disclosure of relevant information". 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2206, p. 607 (1970). The principle of privileged communication is an exception to the general obligation of all persons to make a full disclosure of all facts of which inquiry is made, *Goldinger v. Boron Oil Co.,* 60 F.R.D.

562, 565 (W.D.Pa.1973). As such the scope of the privilege is to be strictly confined. *U. S. v. Pipkins,* 528 F.2d 559 (5th Cir. 1976); *In Re Langswager,* 392 F.Supp. 783 (N.D.Ill., 1975).

In order to determine whether the invocation of the attorney-client privilege is proper, the Fifth Circuit has adopted the often quoted standard of Judge Wyzanski in *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357 (D.Mass.1950). The required elements are that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*id.* at 358–9; *In re Grand Jury Proceedings,* 517 F.2d 666 (5th Cir. 1975); *United States v. Kelley,* 569 F.2d 928 (5th Cir. 1978). The burden of proof is on the party seeking to assert the privilege. *Id.* at 938; *In Re Bonanno,* 344 F.2d 830 (2d Cir. 1965).

It is important to consider the policy behind the attorney-client privilege when seeking to determine its applicability. There is no question that full disclosure between a client and his attorney must be encouraged to promote the efficient administration of justice. *U. S. v. Gordon-Nikkar,* 518 F.2d 972 (5th Cir. 1975). "In order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure must be removed; hence the law must prohibit such disclosure except on the Client's consent." *Radiant Burners, Inc. v. American Gas Association,* 320 F.2d 314, 318 (7th Cir. 1963), quoting 8 Wigmore, Evidence § 2291 (McNaughton Rev.1961). Yet all disclosures between an individual (or corporation) and an advisor are not privileged. The privilege arises when one consults an attorney for the rendition of legal advice or opinions. It is the inner relationship of the attorney and the legal system vis a vis the client that necessitates the policy of protecting confidential communications. Any other rule would handicap an attorney to the detriment of his client and the judicial system.

The action now before the Court does not present the normal case of an attorney voluntarily retained for legal advice. The employment of the Special Counsel in the present action was not completely voluntary as it was in *Diversified.* The Court is aware that the SEC Complaint filed in the District Court for the District of Columbia did not lead to any finding of guilt or fault on anyone's part. In addition the Court has carefully refrained from regarding the Final Judgment of Permanent Injunction or the Consent and Undertaking as evidence of any adjudication of fact or law. However, the Court can take notice of the fact that the decision to set up the SRC and hire special counsel was not reached independently or voluntarily. Rather it resulted from a complaint with charges of serious illegalities being brought by a federal agency against Barwick and certain individuals.

The SRC was not established to chart new courses for the corporation, nor was the Special Counsel retained for the value of his legal services. The mandate of the Consent and Undertaking is clear: "to investigate and report." Messrs. Drake and Porter were employed not for their legal acumen but for their skill as investigators. These individuals' experience in interviewing witnesses, compiling documents, and evaluating data may have been garnered from years of practicing law, but its application was not limited to that field. On the contrary, their expertise was superbly suited to the position of Special Counsel to the SRC. It made them a logical choice to conduct a complex investigation into the tangled financial dealings of Barwick.

Even a cursory glance at the Report of the SRC confirms the Court's conclusion.

The Report, including the supplement, fills over two hundred and twenty pages, excluding exhibits and appendices. Of that, some two hundred and twelve pages is taken up reviewing the practices complained of in the SEC's complaint, including overstatements of inventory, withholding of evidence, allowances for uncollectable accounts, personal use of corporate funds and misstatements of income. Seven pages of the Report are related to recommendations on non-legal, primarily accounting matters. The sole "legal" recommendation of the report, and that cited by the non-movants for their assertion of attorney-client privilege is the following:

*Redress.*

The Company should consider, in light of the matters set forth in this Report, the extent to which, if any, it should seek redress against any person(s) by reason of (a) mismanagement or any corporate waste, including, without limitation, the use of Company funds to discharge the obligation of those persons under circumstances in which the Company was not so obligated and (b) the use of Company assets by those persons for nonbusiness purposes without reimbursement to the Company. The Company should also consider whether or not it should pursue any claims it may have against any person(s) to hold the Company harmless for any losses it may sustain as a result of the Osterneck Litigation or any other actions or proceedings against the Company.

This "advice" does no more than restate the question of redress. It can hardly be expected to convert the other two hundred plus pages of the Report into legal advice.

There have been other circumstances in which substantive communications to an attorney from his client have not been privileged. The most common examples of such holdings arise from the work of patent attorneys. When patent attorneys are concerned with drafting or preparing patent specifications or patentability of an invention or any other such technical work, the attorney-client privilege is inapplicable. *Zenith Radio Corp. v. Radio Corp. of America*, 121 F.Supp. 792 (D.Del.1954); *Underwa-*

*ter Storage, Inc. v. United States Rubber Co.*, 314 F.Supp. 546 (D.D.C.1970). Or when a person who happens to be a lawyer is hired solely as an accountant, the privilege does not apply. *In Re Colton*, 201 F.Supp. 13 (S.D.N.Y.1961). Or when a lawyer acts as a negotiator or business agent the privilege has been held not to apply. *J. P. Foley & Co., Inc. v. Vanderbilt*, 65 F.R.D. 523 (S.D.N.Y.1974). Or when an attorney acts as a mere scrivener the privilege is not available to the client. *Canaday v. U. S.*, 354 F.2d 849 (5th Cir. 1966). The Court is unaware of any case holding that an attorney acting in a capacity similar to that held by Messrs. Drake and Porter was not rendering legal services. However, this Court's research has revealed no case where the issues and facts presented were similar to those in this action. The non-party witnesses may not resist the plaintiff's subpoena on the basis of the attorney-client privilege.

2. Similarly, the non-party witnesses' invocation of the work product doctrine under Federal Rule of Civil Procedure 26(b)(3) is inappropriate. Rule 26(b)(3) states in part:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The documents and tangible things desired by the plaintiffs were not "prepared in an-

ticipation of litigation or for trial." The key inquiry here is not whether this litigation was started prior to the time these documents were accumulated. Rather, "the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 C. Wright and A. Miller, Federal Practice and Procedure § 2024 at 198 (1970). The Court has already dealt at some length with the events leading up to the retention of the Special Counsel. They were not retained voluntarily, nor for their legal expertise. They were retained to conduct an investigation pursuant to a Consent and Undertaking entered into as a result of a complaint being filed by the SEC against Barwick and others. As the Court has already noted little if any of the Report filed by the SRC renders legal assistance. While the Court has no opinion about why the parties in the earlier suit agreed to conduct an investigation, it is safe to say that it was not done in "anticipation of litigation."

3. The parties opposing production have commented at length on the policy considerations involved in ordering compliance with plaintiffs' subpoenas. They argue that by ordering compliance the Court could dissuade other corporations from engaging in an "ancillary relief program." That is if a corporation knew that evidence gathered in a self-investigation was discoverable it would be less likely to conduct such an investigation and certainly would not extend the cooperation that Barwick and its agents and employees did to their investigators. As a result all stockholders will suffer because the corporation will be less likely to police itself and undertake corrective action. Further, if a company does conduct an investigation, witnesses will be less likely to cooperate for fear of disclosures.

The Court agrees that the policy considerations outlined above are indeed strong, but on the facts of the present action they are not compelling. In the first place the investigation undertaken by Barwick was not voluntary as compared to the one performed by the corporate party in *Diversi-*

*fied.* In addition Barwick and all the other sources of information knew that a report was being compiled and would be furnished to the SEC as well as to Barwick's stockholders. Indeed, the promise of nondisclosure did not elicit all the cooperation requested. The Report lists several individuals, including some of the defendants now before the Court, who refused to be interviewed. This Court's determination of the motion to order compliance will apparently have little effect on potential witnesses.

At the same time the Court must consider the plaintiffs' right to investigate their claims and pursue their case. It is somewhat ironic that the opponents of the motion discuss the interest of stockholders for that is exactly the position of the plaintiffs. Their complaint alleges that they are defrauded stockholders, thus filling the role meant to be the beneficiary of the non-movant's policy considerations. The Court does not agree that a policy of nondisclosure will support the interests of stockholders and investors. For additional consideration, see *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir. 1970).

4. The parties have sought to invoke an accountant's privilege, Ga.Code Ann. § 84–220(b) to prevent disclosure of information gathered from Ernst & Ernst and S. D. Leidesdorf who were engaged by Barwick as certified public accountants.

Although there are ancillary claims based on state law, this is primarily a federal question case. "Such actions are predicated on federal law, embodying federal policies. Enforcement of those policies demands that the federal courts apply their own rules of privilege where substantial state interests are not infringed." *Garner v. Wolfinbarger,* 430 F.2d at 1098. In a federal question case a state privilege need not be honored if it is broader than those recognized at common law. 8 C. Wright and A. Miller, Federal Practice and Procedure § 2016 (1970); *Falsone v. U. S.,* 205 F.2d 734 (5th Cir. 1953); *Heathman v. United States District Court for the Central District of California,* 503 F.2d 1032 (9th Cir. 1974). In a case

based almost totally on the federal securities laws, this Court will not recognize an accountant's privilege invoked pursuant to Georgia statutory law.

5. The Court has considered the other objections raised in opposition to plaintiffs' subpoena including preservation of prior privileges and lack of relevancy of the requested information. These objections have no merit and will not be dealt with at length by the Court.

Accordingly, the plaintiffs' motion is GRANTED. Messrs. Drake and Porter are ordered to comply with the subpoenas both as to appearing and testifying at a deposition and as to the requested documents. If there are any remaining problems as to time and place for the deposition or protection and inspection of the documents and tapes, the parties are to confer and reach mutually acceptable terms on the details of these matters.

## APPENDIX A

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | CIVIL ACTION NO. 76–1490 |
| Plaintiff, | CONSENT AND UNDER-TAKING OF E. T. BARWICK INDUSTRIES, INC. |
| v. | |
| E. T. BARWICK INDUSTRIES, INC., ET AL. | |
| Defendants. | |

(1) Defendant E. T. Barwick Industries, Inc. ("ETB") admits the jurisdiction of this Court over it and the subject matter of this action, further admits to the service upon it of a Summons and Plaintiff Securities and Exchange Commission's ("Commission") COMPLAINT FOR INJUNCTION AND ANCILLARY RELIEF ("Complaint") and waives the filing of an Answer.

(2) ETB, without admitting or denying any of the allegations in the Complaint, except as to jurisdiction to which it admits, hereby consents without further notice, to the entry of the FINAL JUDGMENT OF PERMANENT INJUNCTION in the form annexed hereto.

(3) This CONSENT AND UNDERTAKING OF E. T. BARWICK INDUSTRIES, INC. ("CONSENT AND UNDERTAKING") is executed, and the FINAL JUDGMENT OF PERMANENT INJUNCTION in the form annexed hereto is entered, without trial, argument or adjudication of

any issue of fact or law, ETB having waived the entry of findings of fact and conclusions of law. Moreover, neither this CONSENT AND UNDERTAKING nor the FINAL JUDGMENT OF PERMANENT INJUNCTION annexed hereto will constitute or be deemed to be any evidence with respect to any such issue.

(4) ETB waives any right it may have to appeal from the FINAL JUDGMENT OF PERMANENT INJUNCTION in the form annexed hereto.

(5) ETB enters into this CONSENT AND UNDERTAKING voluntarily, and no promise or threat of any kind whatsoever has been made by the Commission or any member, officer, agent or representative thereof to induce ETB to enter into this CONSENT AND UNDERTAKING.

(6) ETB agrees that the FINAL JUDGMENT OF PERMANENT INJUNCTION

in the form annexed hereto may be presented by the Commission to the Court for signature and entry without further notice.

(7) ETB undertakes that its Board of Directors will, within 30 business days from the date of the entry of the FINAL JUDGMENT OF PERMANENT INJUNCTION, or such further time as is approved by the Commission, create a Special Review Committee (the "Special Committee") to investigate and report to the full Board of Directors on the matters alleged in the Commission's Complaint and with respect to all other relevant matters. The Special Committee will consist of members of ETB's Board of Directors not presently or formerly members of management and/or persons who are unaffiliated with ETB, which Committee shall be satisfactory to the Commission. The Special Committee will, within ten (10) days of its selection or such further time as is approved by the Commission, appoint an individual, with the approval of the Commission, to act as Special Counsel to the Special Committee. The Special Committee will engage such experts as it deems desirable in order to conduct its investigation.

(8) ETB undertakes that the Special Committee referred to in paragraph 7 above shall, within 120 days of the entry of the FINAL JUDGMENT OF PERMANENT INJUNCTION herein, or such further time as is approved by the Commission, have concluded its investigation with respect to those matters referred to above.

(9) ETB undertakes that the Special Committee referred to in paragraph 7 above will conduct a full investigation regarding the entire scope of the matters referred to in the Commission's Complaint and other relevant matters.

(10) The Special Committee shall prepare and submit a written report (the "Report"), containing its findings and recommendations, to ETB's Board of Directors within 30 days, or such further time as is approved by the Commission, after it completes its investigation. ETB's Board of Directors, acting only through those members found by the Special Committee not to be involved in the transactions and activities set forth in the Commission's Complaint, shall independently review the Report and shall take such action as it determines necessary and proper to implement the findings and recommendations of the Report and shall seek redress and take further action if warranted.

(11) ETB further undertakes that the scope of the investigation of the Special Committee and its recommendations as contained in the Report shall include a consideration of whether or not any former or present ETB director or officer is and should be held accountable to ETB for any sum of money in connection with this matter.

(12) Within 30 days after the Report has been submitted to ETB's Board of Directors, or such further time as is approved by the Commission, the Report shall be filed with the Commission and with the Court, as part of the record in this action, and as an exhibit to its Current Report on Form 8–K for the month in which the Report is so filed. Within such period, ETB also shall file with the Commission an amendment on Form 8 to its annual reports on Form 10–K for fiscal years 1968 through 1976 and mail a statement to its shareholders. Such amendment and such statement to shareholders shall contain material information from those parts of the Report concerning the matters set forth in Paragraph I of the FINAL JUDGMENT OF PERMANENT INJUNCTION.

(13) ETB further undertakes that its Board of Directors, or an appointed committee thereof, shall review on a continuing basis the FINAL JUDGMENT OF PERMANENT INJUNCTION entered herein in the form annexed hereto and this CONSENT AND UNDERTAKING to ensure that ETB is fully complying with said FINAL JUDGMENT OF PERMANENT INJUNCTION and CONSENT AND UNDERTAKING.

(14) ETB further undertakes that it will use its best efforts to ensure that its offi-

cers, directors, employees, agents and servants comply with Paragraphs IX, X and XI of the attached Final Judgment of Permanent Injunction.

(15) The furnishing of information, documents or materials to the Special Committee and the Special Counsel pursuant to Paragraph IX of the FINAL JUDGMENT OF PERMANENT INJUNCTION shall not be deemed to be a waiver of any privilege which may have previously attached to said information, documents or materials.

(16) ETB further consents and agrees that this CONSENT AND UNDERTAKING shall be incorporated by reference in the FINAL JUDGMENT OF PERMANENT INJUNCTION, in the form annexed thereto, to be entered by the Court in this action.

E. T. BARWICK INDUSTRIES, INC.

BY: Charles E. Selecman
    President & Chief Executive
    Officer

[Acknowledgment]

## APPENDIX B

### UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | : | CIVIL ACTION NO. |
| Plaintiff, | : | FINAL JUDGMENT OF PERMANENT INJUNCTION |
| v. | : | AGAINST E. T. BARWICK INDUSTRIES, INC. |
| E. T. BARWICK INDUSTRIES, INC., ET AL. | : | |
| Defendants. | : | |

Plaintiff Securities and Exchange Commission, ("Commission") having duly commenced this action by filing its COMPLAINT FOR INJUNCTION AND ANCILLARY RELIEF ("Complaint"), and Defendant E. T. Barwick Industries, Inc. ("ETB"), having appeared and admitted to the jurisdiction of this Court over it and over the subject matter of this action; having waived the making of any findings of fact or conclusions of law; before the taking of any testimony and without trial, argument, or adjudication of any issue of fact or law herein; and without admitting or denying the allegations of the Complaint, having consented to the entry of this Final Judgment of Permanent Injunction; and having entered into certain undertakings contained in the CONSENT AND UNDERTAKING OF E. T. BARWICK INDUSTRIES, INC. annexed hereto and incorporated herein, without this FINAL JUDG-MENT OF PERMANENT INJUNCTION or CONSENT AND UNDERTAKING constituting any evidence by ETB or of its officers or directors with respect to any of the allegations of the Complaint, it is hereby

### I.

ORDERED, ADJUDGED AND DECREED that ETB, its officers, directors, agents, servants, employees, successors, assigns, affiliates and subsidiaries, and those persons in active concert or participation with them, and each of them, are hereby permanently restrained and enjoined from violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 thereunder by, directly or indirectly, in connection with the purchase and sale of the securities of ETB, its affiliates, subsidiaries or successors, or any other issuer, by use of any means or instrumentali-

ties of interstate commerce, or of the mails or of any facility of any national securities exchange to: (1) employ any device, scheme or artifice to defraud; (2) make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any persons concerning, among other things:

(a) Any misstatements of income or earnings of ETB or of its affiliates or subsidiaries, material in nature, amount or effect, through improper inventory adjustments, improper reversal of expense accruals or otherwise;

(b) Any default, material in nature, amount or effect under the terms of any credit, loan or financing agreement to which ETB, its affiliates or subsidiaries is a party, or the failure to disclose fully and accurately all material facts relating to such default;

(c) Any fund of corporate monies or other assets established or maintained without being fully and properly accounted for on corporate books and records, or the nature and extent of payments, if any, therefrom;

(d) Any agreement, understanding, arrangement or transaction involving the use of corporate funds, for a non-corporate purpose, which directly or indirectly personally benefits any officer or director of ETB or its affiliates or subsidiaries;

(e) Any false or fictitious entries on the books and records of ETB, its affiliates or subsidiaries, with respect to the matters referred to in subparagraphs (a) through (d);

(f) Any transfers or disbursements of corporate funds, material in nature, amount or effect, which were or are being effected without the application of adequate accounting or auditing procedures and controls; and

(g) The extent to which any officer, employee or director of ETB or any of its affiliates or subsidiaries, acting as such, has participated in or aided and abetted the activities required to be disclosed pursuant to subparagraphs (a) through (f) above, and the extent to which any officer or director of ETB or any of its affiliates or subsidiaries, acting as such, had knowledge of the activities required to be disclosed pursuant to subparagraphs (a) through (f) above.

(h) The concealment of the practices described in subparagraphs (a) through (g) above.

## II.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB, its officers, directors, agents, servants, employees, successors, assigns, affiliates and subsidiaries, and those persons in active concert or participation with them, and each of them, are hereby permanently restrained and enjoined from, directly or indirectly:

(a) Violating Section 13(a) of the Exchange Act and Rules 12b–20, 13a–1, 13a–11 or 13a–13 thereunder, by failing to file required reports or by filing with the Commission, or aiding and abetting the filing with the Commission of annual, quarterly and current reports on behalf of ETB or any of its affiliates or subsidiaries which are materially false and misleading or fail to disclose information required to be disclosed on Forms 10–K, 10–Q, and 8–K, respectively, concerning the matters referred to in Paragraph I above; or

(b) Violating Section 14(a) of the Act, and Rules 14a–3 or 14a–9 thereunder, by using the mails or means and instrumentalities of interstate commerce to file, or aid and abet the filing with the Commission of, definitive copies of proxy statements or to solicit proxies from shareholders of ETB, or any of its affiliates or subsidiaries, by means of proxy statements which are materially false and misleading, or fail to contain the information specified in Schedule 14A [17 C.F.R. 240.14a–101], concerning the matters referred to in Paragraph I above.

## III.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB, its

officers, directors, agents, servants, employees, successors, assigns, affiliates and subsidiaries, and those persons in active concert or participation with them, and each of them, are permanently restrained and enjoined from making, or causing to be made, false or fictitious entries, material in nature, amount or effect, on the books and records of ETB or any of its affiliates or subsidiaries, or establishing or maintaining or aiding and abetting the establishment or maintenance of any fund of corporate monies or other assets which is not fully and properly accounted for on said books and records, or making or aiding and abetting the making of any payments, disbursements or transfers therefrom.

### IV.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB shall correct and amend its annual and other periodic reports currently on file with the Commission, relating to ETB's fiscal years ended April 30, 1968 through April 30, 1976, with respect to those matters referred to in Paragraph I above, consistent with the requirements of both the attached CONSENT AND UNDERTAKING OF E. T. BARWICK INDUSTRIES, INC. and the Federal securities laws.

### V.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB, its officers, directors, agents, servants, employees, successors, assigns, affiliates, subsidiaries, and those persons in active concert or participation with them, and each of them, shall preserve all documentation in their possession or under their control with respect to those matters referred to in Paragraph I above, for a period of five years from and after the date hereof or for such other time as the Commission may require.

### VI.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the annexed CONSENT AND UNDERTAKING OF E. T. BARWICK INDUSTRIES, INC. be, and the same hereby is, incorporated herein with the same force and effect as if fully set forth herein.

### VII.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant ETB shall fully comply with its undertakings as set forth in the attached CONSENT AND UNDERTAKING OF E. T. BARWICK INDUSTRIES, INC.

### VIII.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the terms of the annexed CONSENT AND UNDERTAKING OF E. T. BARWICK INDUSTRIES, INC. concerning the report therein described are not complied with to the full satisfaction of the Commission, the Commission may apply to this Court for such additional relief as may be appropriate.

### IX.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB, its officers, directors, employees, agents, servants, affiliates and subsidiaries, will cooperate fully with the Special Committee and the Special Counsel described in the attached CONSENT AND UNDERTAKING and furnish any information, documents and materials that either may request in connection with the investigation referred to in paragraph 7 of the attached CONSENT AND UNDERTAKING.

### X.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB, its officers, directors, employees, agents, servants, affiliates and subsidiaries will cooperate fully with the Commission and furnish any information, documents and materials that the Commission may request, and provide to the Commission access to all materials with respect to the matters investigated by the Special Committee as set forth

in paragraph 7 of the attached CONSENT AND UNDERTAKING; provided, however, that with respect to any such information, documents and materials that are privileged, the Commission may have access to such information, documents and materials upon a determination and order of this Court that any such access does not constitute a waiver of such privilege.

### XI.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETB, its officers, directors, employees, agents, servants and affiliates and subsidiaries, as if still parties to this action will respond to requests for discovery by the plaintiff in accordance with the provisions of the Federal Rules of Civil Procedure and shall make themselves available as witnesses at all trials in this matter.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court retain jurisdiction of this matter for all purposes.

---

UNITED STATES DISTRICT JUDGE
DATED:
     Washington, D. C.